**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge Raymond P. Moore**

Criminal Action No. 22-cr-00167-RM-1
(Civil Action No. 25-cv-00561-RM)

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

v.

1. JORGE ALBERTO ORTIZ-ACOSTA,

      Defendant/Movant.

---

## ORDER DENYING § 2255 MOTION

---

This matter is before the Court on the *pro se* motion of Defendant ("Ortiz-Acosta") captioned as "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 1141, hereinafter the "Motion"). The Court has considered the Motion and the government's response (the "Response") (ECF No. 1148). Ortiz-Acosta was permitted to file a reply but did not do so. The Court has also reviewed the docket generally. Based on its review and overall familiarity with this matter, and for the reasons set forth below, the Motion is DENIED.

### I.     Procedural Background

On May 19, 2022, a 54-count indictment was returned charging Ortiz-Acosta and 32 others with various drug and money laundering offenses. As to Ortiz-Acosta specifically, the indictment alleged 29 felony violations of federal law: conspiracy to distribute cocaine (Count 1), possession with intent to distribute five kilograms and more of cocaine (Counts 13, 30, 43

and 54), possession with intent to distribute 500 grams and more of cocaine (Counts 3, 5, 7, 25, 27, 33 and 40), use of a communications facility in furtherance of drug distribution (Counts 2, 4, 6, 9, 12, 23, 24, 26, 32, 39, 41, 51, and 52), and money laundering (Counts 10, 22, 28 and 53). (ECF No. 1.)

On May 3, 2023, Ortiz-Acosta pleaded guilty to Counts 1 (conspiracy to distribute) and 10 (money laundering) pursuant to a plea agreement with the United States. The essential components of the agreement were that Ortiz-Acosta agreed to plead to those counts, to waive various rights, to forfeit certain property, and to cooperate as described in writing. The government agreed to dismiss 27 felonies[1], agreed to three points for acceptance under the guidelines and, assuming compliance with respect to cooperation, to recommend a sentence up to 52% below the bottom of the applicable guideline range. (ECF Nos. 529, 530, and 531.)

Sentencing occurred on February 21, 2024. Prior to sentencing, the Probation Office computed the guideline range as 324-405 months based on a total offense level of 40 and a criminal history category of II. (ECF No. 1038.) There were no objections to this calculation. After noting that it believed a firearms adjustment was applicable in addition to the specific offense characteristics applied by the Probation Office and after discussing the matter with counsel, the Court indicated that it would opt not to apply the additional adjustment and accepted the calculations in the Presentence Report. (ECF No. 1145 at 4-8.) The government recommended a sentence of 156 months or 13 years. (ECF No. 1145 at 17.) After considerable discussion with counsel for the parties and after hearing from Ortiz-Acosta, the Court imposed a concurrent sentence of 180 months or 15 years on each count of conviction.[2] (ECF Nos. 1145 at

---

[1] The government and Ortiz-Acosta's agreement actually called for the dismissal of 28 counts. This is because the parties erroneously listed Count 36 as charging Ortiz-Acosta.

[2] The Motion, at p.1, correctly recites the sentence as 180 months, but thereafter incorrectly calculates this as 16 years.

45; 1069.) This sentence was within a range (156-194 months) that was 52% below the applicable guideline range, but neither the bottom nor what either party had requested. (ECF No. 1029.) As Ortiz-Acosta had waived his right to appeal, he did not appeal the sentence.

On February 19, 2025, Ortiz-Acosta timely filed the Motion.[3] He asserts that his counsel was ineffective, initially identifying four grounds or areas of alleged ineffectiveness. First, he claims ineffectiveness by counsel in "misrepresenting the likely sentencing outcome." Second, he contends that "counsel failed to secure a binding plea agreement reflecting the extent of Mr. Ortiz-Acosta's cooperation." Third, he alleges that "counsel failed to advise Mr. Ortiz-Acosta of the risks his cooperation posed to him and his family." Fourth, he states that "counsel was ineffective for failing to challenge the government's insufficient evidence supporting upward adjustments [under the guidelines]." (ECF No. 1141 at 4-8.) As part of his discussion of his fourth ground, however, Ortiz-Acosta includes an additional matter which does not relate to upward adjustments and is, in reality, a separate and fifth ground: counsel failed to argue for a downward variance. (ECF No. 1141 at 20.)

## II.    Analysis

The Supreme Court has established a two-prong test to evaluate ineffective assistance of counsel claims. *See Strickland v. Washington*, 466 U.S. 668 (1984) ("*Strickland*"). Ortiz-Acosta must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance was prejudicial. *Id.* at 687. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* Counsel's performance must be more than merely "wrong" in some way. It must be "completely

---

[3] The Motion reflects "Case No. 22-cr-00134-DDD" throughout. This is an error. Ortiz-Acosta originally had a one count indictment for distribution pending against him in 22-cr-00134-DDD. But it was dismissed upon return of the indictment in this matter which subsumed the earlier charge. The Motion was first filed in 22-cr-00134-DDD, but the Court in that case recognized Ortiz-Acosta's error and had the Clerk of the Court refile the Motion in this, the correct case.

unreasonable." *Hoxsie v. Kerby*, 108 F. 3d 1239, 1246 (10th Cir. 1997). In terms of prejudice, Ortiz-Acosta must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. Where, as here, the defendant has pled, he must show that but for the errors, there is a "reasonable probability" that he would have insisted on going to trial. *United States v. Dominguez*, 998 F.3d 1094, 1111 (10th Cir 2021) ("*Dominguez*"); *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002).

## A. Representations as to Sentence

At the outset, the stated ground is deficient substantively because of whom it is directed against. Ortiz-Acosta retained counsel. And he had four different attorneys enter appearances on his behalf – Harvey Steinberg ("Steinberg") and Steinberg's associates, Stephen Burstein ("Burstein"), Craig Pankratz ("Pankratz"), and Emily Boehme ("Boehme"). (ECF Nos. 45, 72, 276 and 309.) Ortiz-Acosta names only Steinberg as making erroneous representations. (ECF No. 1141 at 4, "Attorney Steinberg advised Mr. Ortiz-Acosta …") Pankratz and Boehme primarily appeared in connection with pretrial motions or matters not of record and, arguably, can be considered as something less than advice providers. But Burstein cannot.

Although Steinberg appeared at the change of plea hearing (ECF No. 1144 at 2), it was Burstein who served as primary counsel with respect to the plea, standing with Ortiz-Acosta throughout the May 3, 2023, hearing. (ECF No. 1144 at 2, 17 and 33.) It was Burstein, not Steinberg, who reviewed with Ortiz-Acosta his rights and plea consequences in advance of the hearing and who – along with Ortiz-Acosta – signed all plea paperwork on April 28, 2023. (ECF Nos. 529 at 4, 530 at 19, and 531 at 11.) And so the question that is begged is, "What difference does it make if Steinberg made some representation at some unknown time if Ortiz-Acosta was

4

correctly advised by Burstein in connection with his plea?" As there is no suggestion that Burstein was incorrect or incomplete in his representation and advice, the answer might be – "none."

But rather than assume facts as to when Steinberg said what, or even if it was Burstein and not Steinberg who "misrepresented," the Court finds that ineffective assistance has not been established regardless. If "counsel" represented to Ortiz-Acosta that he would receive a sentence of less than ten years, as alleged, based on his cooperation (ECF No. 1141 at 16), Ortiz-Acosta's claim still fails on the merits. Inaccurate projections as to what sentence a defendant will receive are not matters which constitute deficient performance under *Strickland*. "[E]rroneous sentencing advice does not render counsel's performance constitutionally deficient." *United States v. Landsaw*, 206 Fed. Appx. 773, 776 (10th Cir. 2006) (unpublished). *See*, *United States v. Silva*, 430 F. 3d 1096, 1099 (10th Cir. 2005) (erroneous sentencing estimate does not make plea involuntary); *United States v. Gordon*, 4 F. 3d 1567, 1570 (10th Cir. 1993) (miscalculation or erroneous estimation of sentence insufficient); *United States v. Garcia*, 630 Fed. Appx. 755, 758 (10th Cir. 2015) (recognizing that Tenth Circuit has "routinely held" miscalculations not constitutionally deficient) (unpublished).

But Ortiz-Acosta sometimes claims that this was more than a projection or estimate. It was, he says, a "promise." (*Compare* ECF No. 1141 at 16 ("assurances") and at 21 ("promises").) If that matters, the record does not support such a claim. No part of the plea agreement states that a less than 10-year sentence was to be imposed. Indeed, even if the Court found in Ortiz-Acosta's favor on every guideline calculation that Ortiz-Acosta reserved the right to argue against in the plea agreement, and even if the Court thereafter applied a 52% downward departure for cooperation (the maximum that was represented as potentially being sought by the

government), the expected sentence imposed would still be in excess of ten years - .48 x 262 = 126 months. (*See*, ECF Nos. 529 and 530.)

Further, the record developed in connection with Ortiz-Acosta's pleas is utterly inconsistent with some promise being made as to a ten-year sentence which was not reflected in the plea agreement. His Statement in Advance of Guilty Plea says:

> 17. No agreements have been reached and no representations have been made to me as to what the sentence in this case will be, except those which are explicitly detailed in the document entitled "Plea Agreement" which I and the government have signed. I further understand that any sentencing agreements and stipulations in the document entitled "Plea Agreement" are binding on the Court only if the parties ask the Court in that document to be so bound pursuant to Rule 11 (c)(1)(C) and only if the Court agrees to be so bound when it accepts my guilty plea(s).

> ***          ***          ***

> 23. Other than the promises of the government set out in the document entitled "Plea Agreement," no promises and no threats of any sort have been made to me by anyone to induce me or to persuade me to enter my plea(s) in this case.

> 24. No one has promised me that I will receive … any … specific sentence desired by me because of my plea(s) of guilty.

(ECF No. 531 at 7-9.)

Ortiz-Acosta's plea agreement is to the same effect:

> The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied.

(ECF No. 530 at 18.)

And in Court, under oath, Ortiz-Acosta admitted that he read, understood, and freely signed the various plea documents. He then confirmed that there were no additional promises:

> *THE COURT:* Do [the plea documents] contain every single agreement that you have with the government, in terms of resolving this case?

> *THE DEFENDANT:* Yes, Your Honor.
>
> *THE COURT:* Has anyone made any promise to you that is not in these documents, in order to get you to plead guilty.
>
> *THE DEFENDANT:* No, Your Honor.

(ECF No. 1144 at 7-8.)

The Court is entitled to rely on the veracity of such statements. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977). "[T]he truth and accuracy of a defendant's statements during the Rule 11 proceeding should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements." *United States v. Weeks*, 653 F.3d 1188, 1205 (10th Cir. 2011) (quoting *Hedman v. United States*, 527 F. 2d 20, 22 (10th Cir. 1975)).

Even if counsel's representation, projection, advice or promise as to sentencing could somehow be seen as being both made and deficient, Ortiz-Acosta's claim would still fail as he has suffered no prejudice. First, Ortiz-Acosta understood at his plea hearing that sentencing was up to the Court. Therefore, he did not rely on any earlier representation, projection, advice or promise. Second, Ortiz-Acosta would have pleaded guilty even if he had not been "deficiently advised."

The record in this case leaves no doubt that Ortiz-Acosta understood the risks of sentencing. His Statement by Defendant in Advance of Plea contains the following statement:

> I recognize that it is possible that the Court could, after considering these [sentencing] factors, impose any sentence in my case, including one which is as severe as the maximum term of imprisonment, the maximum fine, full restitution (if applicable), the maximum term of supervised release, and a special assessment …

(ECF No. 531 at 2.)

His plea agreement states:

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

(ECF No. 530 at 18.)

And at his change of plea, Ortiz-Acosta was told:

*THE COURT:* … And so, it's possible, that I could sentence you differently than what the guideline recommends is the right sentence, or your lawyer asks me to do, or the government asks me to sentence you by, or what you ask me to do …
Do you understand.

*THE DEFENDANT:* Yes, Your Honor.

(ECF No. 1144 at 24.) *See, generally*, ECF No. 1144 for the full and detailed advisement.

Knowing the risks at the time of his pleas and still going forward with those pleas of guilty is fatal to Ortiz-Acosta's claim of prejudice. He confirmed repeatedly that he understood what the Court could do by way of sentencing. Ortiz-Acosta cannot now claim that he relied not on what he acknowledged he knew, but instead on some prior, disclaimed promise of counsel.

Second, even if Ortiz-Acosta for some reason did rely on counsel, Ortiz-Acosta would still have pleaded guilty had the erroneous advice not been given. As noted earlier, because he pleaded guilty, in order to show prejudice, Ortiz-Acosta must show a "reasonable probability" that but for the deficient performance he would have gone to trial. No such reasonable probability has been or can be shown.

Ortiz-Acosta does not even claim that he would have gone to trial. Instead, what he says is that "he may have opted to proceed to trial or negotiate a more favorable agreement." (ECF

No. 1141 at 17.) As for the latter, there is nothing presented which demonstrates that any "more favorable agreement" could have been obtained by Ortiz-Acosta under any circumstances.[4] He merely tries to speak this into existence by declaring it to be so. And there is nothing that he could negotiate which would guarantee that the Court would give him any lesser sentence than the 15 years it ultimately imposed. As it is, the Court had the ability and a government recommendation to impose less here … and refused.

This Court does not even believe that the "better plea agreement" argument is a properly cognizable claim of deficient performance or prejudice within the meaning of *Strickland* in most cases. And not at all in this case. *See Dominguez* at 1116-18. There is always some better plea agreement which could, in theory, be claimed as obtainable by a better attorney. If making such a claim is all that is required, a defendant could always assert that a better lawyer would have obtained for him a lesser sentence, or probation, or whatever else he feels is appropriate. The law does not require a finding of ineffectiveness of counsel whenever a defendant, channeling Oliver Twist, can say with respect to a sentence reduction, "Please, sir, I want some more." Even assuming that the "better plea agreement" argument would support a claim under *Strickland*, it fails in any event in this case as, here, it is based on nothing more than speculation and conjecture as to the existence and effect of such a "better agreement."

And there is no reasonable probability that Ortiz-Acosta would have gone to trial. Putting aside the strength of the government's evidence (which included wiretaps, incriminating post-arrest statements, and the voluntary surrender of 28 kilograms of cocaine)[5] and the fact that no weakness in that evidence or any trial defense has ever been hinted at, going to trial would have

---

[4] Because of the extent of the departure given, government counsel had to not only come to some agreement with Ortiz-Acosta, but also to obtain the approval of the section chief. (ECF No. 1144 at 8-9.) This would also be true of any "more favorable agreement" which Ortiz-Acosta believes might have been available to him.

[5] *See* Presentence Report, ECF No. 1038.

exposed Ortiz-Acosta to 27 more felony convictions, no acceptance (which would cause the

guideline range to become "life"), and no government sponsored departure. Any claim that

Ortiz-Acosta would have proceeded to trial if he had known – as he did – that his actual sentence

was in the discretion of the district judge is irrational. Ortiz-Acosta would have this Court

believe that he would have reasonably taken the risks stated above in order to still have his

sentence be determined by the Court post-trial. For what? Spite? The declaration by Ortiz-Acosta

that he "may" have followed such an irrational course of conduct is no more than self-serving

declaration that falls well short of establishing a "reasonable probability."

### B.  Failure to Secure Binding Plea Agreement

Ortiz-Acosta claims that counsel was ineffective in failing to ensure "that the government

agreed to a concrete sentencing recommendation reflecting his cooperation." According to Ortiz-

Acosta, deficient performance occurred when, "Attorney Steinberg failed to secure a binding

agreement, thereby exposing Mr. Ortiz-Acosta to a significantly harsher sentence than

anticipated." (ECF No. 1141 at 5.)

Nothing alleged constitutes deficient performance by counsel. Ortiz-Acosta claims that

his counsel should have obtained a concrete sentencing recommendation reflecting his

cooperation. Counsel did. The government agreed to recommend a departure of up to 52% below

the bottom of the applicable guideline range based on Ortiz-Acosta's cooperation. And that is

exactly what the government requested at sentencing – 13 years or 156 months, which was 52%

below the low-end guideline range of 324 months. (ECF No. 1145 at 17.) The Court, being fully

aware of the extent of his cooperation (ECF No. 1029) and having witnessed his trial testimony

against a lesser member of the conspiracy, simply declined to impose that sentence.

Ortiz-Acosta's counsel was not deficient in obtaining a plea agreement resulting in a government recommendation which was 168 months below the guidelines, even though the Court imposed a sentence which was "only" 144 months below. If Ortiz-Acosta wants to claim ineffectiveness because counsel did not obtain a less than 10-year recommendation (say 108 months or 9 years), then he is claiming ineffectiveness for failure to obtain a recommendation 66% below the guideline range accepted by the Court and 70% below that which the Court indicated that it believed to be the true guideline range. If such an outcome is required for effective representation in this case, then most, perhaps all, counsel in the district would be ineffective.

*Strickland* does not demand the best outcome at a trial. It only mandates competent representation within an objective range of reasonable professional assistance. Why it would demand more here and insist upon the best outcome from plea negotiations is unexplained. Especially where the outcome that was obtained is clearly within the range of reasonable professional assistance. But skipping over these questions, Ortiz-Acosta calls the lack of a better recommendation the result of *Strickland* ineffectiveness.

What Ortiz-Acosta actually wants is not some better recommendation from the government, but an agreement which binds the Court and guarantees him a sentence (presumably less than ten years) which comports with Ortiz-Acosta's subjective valuation of his cooperation. But there is no such agreement that will absolutely binds the Court as Ortiz-Acosta wants. The closest that exists would be a Rule 11(c)(1)(C) agreement. But even that agreement could be rejected by the Court. And Ortiz-Acosta presents no facts supporting the notion that such an agreement would have been offered by the prosecutor, approved by the section chief, or accepted by the Court. As such, his claim is entirely speculative and does not implicate a constitutional

11

deficiency of counsel. Additionally, with no facts supporting the notion that the Court would have inexplicably accepted a Rule 11(c)(1)(C) agreement to a sentence less than that which it refused to give in this case, prejudice is also entirely speculative.

### C. Failure to Advise of Risks of Cooperation

The Court will assume for the sake of argument that counsel failed to advise Ortiz-Acosta of the risks of cooperation. Nothing about such an occurrence constitutes ineffectiveness under *Strickland*.

First, the Court notes the irony. Ortiz-Acosta is now arguing that his counsel is at fault for not dissuading him from cooperating. Had counsel done so, Ortiz-Acosta would likely have received a greater sentence.

Second, the Court is aware of no case law or requirement in this Circuit that a defendant be informed not only of direct, legal consequences of a plea, but also of societal risks such as disassociation of family or friends, dislike by others, divorce, unhappiness or even threats by those against whom cooperation is provided, or any other like matter. Indeed, if the Court, at a change of plea hearing, began advising a cooperating defendant that he might not want to cooperate because of risks from others, the Court would rightfully be exposed to criticism over injecting itself into plea negotiations. And if there is no legal obligation on the Court, then the Court fails to see how counsel is under a legal obligation to advise a defendant of such matters with respect to his plea.

Third, Ortiz-Acosta's attempt to persuade the Court by citing case law, charitably, fails. Whether Ortiz-Acosta is using artificial intelligence, copying the pleadings of others, bad at research or just making up case law, the cases he cites do not come close to supporting his claim. He cites "*United States v. Rogers,* 469 F. App'x 647 (10th Cir. 2012) (holding that failure to

advise a defendant of material risks constitutes ineffective assistance).” But there is no such case. The cite “469 F. App'x 647” when put into Westlaw or Lexis returns a Ninth Circuit case captioned *Al-Rifai v. Willows Unified School Dist*rict. And with respect to “*United States v. Hernandez,* 509 F.3d 1290, 1296 (10th Cir. 2007) (finding ineffective assistance where counsel failed to advise on immigration consequences of a guilty plea),” the case does exist, but involves a defendant who went to trial and does not speak at all to the matter for which it is cited.[6]

Fourth, the law in this Circuit does not require advisement of every collateral consequence which may flow from a plea. As stated in *Dominguez* at 1105,

> More particularly, a defendant knowingly and intelligently pleads guilty if he understands his plea's “*direct* consequences,” even if he does not also “understand every *collateral* consequence of the plea.” *Hurlich*, 293 F.3d at 1230–31 (emphases added); *see United States v. Muhammad*, 747 F.3d 1234, 1239–40 (10th Cir. 2014) (“[T]here is no requirement that a defendant be advised of all potential collateral consequences of a guilty plea in order for that plea to be ... knowing[ ] and intelligent.” (alteration in original) (quoting *United States v. Krejcarek*, 453 F.3d 1290, 1296 (10th Cir. 2006))).

And here, the risks of which Ortiz-Acosta complains are not even consequences of pleading guilty. They are merely consequences of cooperation.

Fifth, it is widely known and common sense that people against whom cooperation is provided may think less than fondly of the person who provides the cooperation. And in terms of the specific people with whom Ortiz-Acosta interacted and to whom he is referring, they and

---

[6] And these are not the only instances of such “curiosities.” See, *e.g.*, ECF No. 1141 at 15 first citing “*United States v. Carter,* 662 F.3d 1145, 1151 (10th Cir. 2011)” which is actually *Carter v. Pathfinder Energy Services, Inc.* – a civil case having nothing to do with the proposition of law referenced by Ortiz-Acosta and then citing “*United States v. Gordon,* 4 F.3d 1567, 1570 (10th Cir.1993) (holding that counsel's performance is deficient if they fail to negotiate a favorable plea despite an available opportunity to do so)” where the matters allegedly part of the holding were not even discussed – much less part of the holding of the Circuit.

their dangerousness are better known to him - not necessarily his counsel. Ortiz-Acosta is the one in the best position to evaluate risk. And he did so. Before counsel was even involved in this matter, Ortiz-Acosta began his cooperation at the very moment of his arrest and the following day. (*See*, ECF No. 1029 at 1-2; ECF No. 1038 at 21-22.)

Finally, there is no showing of prejudice with respect to this claimed ineffectiveness. Assuming societal matters would constitute *Strickland* prejudice, Ortiz-Acosta identifies no individual who has threatened anyone. He simply assumes prejudice claiming, without explanation, that he was "deprived of the ability to make an informed decision." (ECF No. 1141 at 17.) But he was informed by the Court of all matters that the law requires in advance of his plea. And the legal or judicial prejudice to his case is that he received a lesser sentence due to cooperation? Ortiz-Acosta simply contorts the law as he sees fit. His claim is wholly without merit.

### D.  Claimed Ineffectiveness at Sentencing

As noted earlier, there are two components to this claim. Ortiz-Acosta argues that certain sentencing matters should have been the subject of objection. He also argues that a variance should have been sought. Neither has merit.

In terms of failures to object to guideline adjustments, Ortiz-Acosta first claims that that the premises adjustment under § 2D1.1(b)(12) should have been objected to as there was no "direct evidence" that "the primary use" was for drug distribution. But "direct evidence" is not required to support a guideline enhancement – only such evidence as supports the enhancement by a preponderance. And "the primary use" is not the inquiry – only whether the residence was "a primary use." And at no time does Ortiz-Acosta dispute the Presentence Report's factual determination that:

the defendant admitted that a second bedroom of his mother's residence, located at 328 South Alcott Street, Denver, Colorado, [where he paid rent] was used by him and his brother [and co-conspirator], Julio Ortiz-Acosta, to store drugs.

(ECF No. 1038 at 22, 26.)

Ortiz-Acosta next claims that the importation adjustment under § 2D1.1(b)(16)(C) should have been objected to as the government did not present "direct evidence" that he was involved in the importation process. But, again, "direct evidence" is not required. And, again, at no time does Ortiz-Acosta dispute the Presentence Report's factual determination that:

> Further, in the stipulated facts contained in the Plea Agreement the following is noted, "On or about January 12, 2022, DEA agents intercepted a call pursuant to a court-authorized wiretap in which the defendant indicated that co-defendant Ever Valenzuela-Ramos was on his way to Denver with a drug load when Mexican police stopped him. Co-defendant Sonia Saenz-Osorio responded that she had successfully arranged for her son to take money to the Mexican police to get Valenzuela-Ramos released from the stop. In a later conversation, the defendant indicated that co-defendant Jobel Irai Fontes-Nieto had sent one kilogram of cocaine for him with Valenzuela-Ramos." Codefendant, Jobel Irai Fontes-Nieto is the source of supply from Chihuahua, Mexico.

(ECF No. 1038 at 27.)

Ortiz-Acosta next claims that the adjustment for knowing that laundered funds were for drug trafficking under § 2S1.1(b)(1) should have been objected to as double counting given that the drug guideline was already used to calculate the money laundering base offense level. Ortiz-Acosta argues that circuit law prohibits double counting "unless specifically authorized by the Guidelines." But the money laundering guideline, § 2S1.1(a) explicitly directs the use of the guideline for the "underlying offense" as the base offense level for money laundering and then explicitly also adds a specific offense adjustment for use of laundered funds in furtherance of drug trafficking. What more specific authorization is needed is not explained.

15

Lastly, Ortiz-Acosta claims that the role adjustment under § 3B1.1(b) should have been objected to as the government "failed to demonstrate that he exercised actual control over at least five participants." But the guideline only requires that the "criminal activity involved" five or more participants or was otherwise extensive. And Ortiz-Acosta does not challenge the fact that the conspiracy had five or more participants and that he was a "manager or supervisor" of some other participants.

As presented, all of these guideline objections are frivolous. They are premised on improper burdens, misreading the language of the guidelines, and obvious blindness to facts readily available to support the adjustments. Competent counsel is not required by *Strickland* to make every conceivable objection, even meritless ones, in the hopes that something favorable might happen. *See*, *United States v. Babcock*, 40 F. 4th 1172, 1184 (10th Cir. 2022) (counsel not ineffective for failing to raise guideline challenges which were not clearly meritorious). Ortiz-Acosta has not shown that counsel's decision to forgo his objections was outside of the range of reasonable professional assistance.

As for prejudice, none has been shown. Obviously, if the objections lack merit, raising them would not have altered the guideline range, much less the sentence. But even if he had prevailed on one or more of his now proffered objections, Ortiz-Acosta has not shown that a guideline change would have altered the sentence the Court imposed. The Court had a guideline basis and a government recommendation supporting a sentence of less than 180 months. The Court refused to give such a sentence. The overall circumstances warranted a 15-year sentence in the eyes of the Court. It simply cannot be assumed that the Court would have concluded differently if the guideline range was lessened somewhat. As it is, at the outset of sentencing, the

16

Court indicated that it believed the guideline used for sentencing was actually too low. And the government could not disagree. (ECF No. 1145 at 8.) On the current record, prejudice is simply speculative.

In terms of a variance, Ortiz-Acosta's claim is threadbare. All that he says, and only then in his memorandum of law and not the Motion proper, is that:

> Counsel **failed to argue** for a downward variance based on mitigating factors, including:
>
> • **Personal history and characteristics** that demonstrated his potential for rehabilitation.
>
> • **Disparities** in **sentencing among co-defendants,** which the Supreme Court and Tenth Circuit recognize as a basis for a downward variance. See *l!nited States v. Smart,* 518 F.3d 800, 810 (10th Cir. 2008).
>
> Had counsel presented these factors, the Court could have exercised its discretion to impose a significantly lower sentence.

(ECF No. 1141 at 20.)

Ortiz-Acosta identifies no information that was not already before the Court. And he structures no argument as to his characteristics and co-defendant sentences which would support a variance on top of the substantial departure he already received. He ignores that he was the top defendant in the case and more culpable than others. He ignores the fact that two co-defendants of lesser culpability received sentences of 210 and 120 months.

Counsel was not beyond the bounds of reasonable professional assistance in opting to lean on the government sponsored departure instead of a variance. Counsel intended to push for a greater departure than the 13 years recommended by the government based on the value of cooperation. But he had to react to the Court's clear indication that it was disinclined to go along with even the departure recommendation. That, then, became his focus. (*See*, ECF No. 1145 at

36.) Nothing presented by Ortiz-Acosta supports the notion that counsel's strategic decisions were outside the bounds of professional representation.

Nor has Ortiz-Acosta made an adequate showing of prejudice. In a case where the Court declined to follow the government's departure recommendation and the defendant's request for a lesser sentence, more is required to show prejudice that to say that the Court "could have exercised its discretion" to impose a lesser sentence. It already possessed that discretion, knew that, moved 144 months below the guidelines, and declined to go lower. Ortiz-Acosta's prejudice claim, based on the mere possibility that some unspecified argument under the label of variance would have caused the Court to view matters differently than it did, is nothing more than speculation and conjecture.

### E.  Unfairness

Although not set forth specifically as grounds for relief, Ortiz-Acosta concludes his memorandum in support of the Motion by asserting that the guideline errors discussed above implicate fundamental fairness. (ECF No. 1141 at 23-4.) As Ortiz-Acosta appears *pro se*, the Court will consider these arguments as well. But they do not elevate any claim to a level where it can be deemed meritorious.

At the outset, the Court recognizes that it views these final matters differently than the government does. The government's Response takes the view that these are independent, substantive challenges to Ortiz-Acosta's conviction and sentence. Taking that view, the Response analyzes in detail how substantive challenges are covered by the collateral attack waiver that is a part of Ortiz-Acosta's plea agreement. (ECF No. 1148 at 16-19.) If Ortiz-Acosta's "unfairness" arguments are substantive challenges, they have been waived as fully

18

explained by the government in the Response.[7] However, the Court considers that these final matters are inartful extensions of Ortiz-Acosta's ineffectiveness claims and meant as further evidence of alleged ineffectiveness of counsel. But even reading the argument this way is of no benefit to Ortiz-Acosta as the claims and allegations are without merit.

First, Ortiz-Acosta points to the fact that there were disagreements as to guideline calculations reserved in the plea agreement. This is true. And he claims that this demonstrates "that the sentence was not definitively determined at the time of plea negotiations …" (ECF No. 1141 at 23.) This is also true. The calculations were non-binding estimates, and Ortiz-Acosta was explicitly told that. (ECF No. 1144 at 23-24.) To the extent that he claims that *the sentence* was not determined pre-plea, he is again correct. He also knew this at the time of his pleas as shown above. His raising the matter again adds no weight to prior arguments.

Next, Ortiz-Acosta alleges "criminal history computation uncertainty." (ECF No. 1141 at 24.) He claims:

> The parties tentatively agreed to a Criminal History Category II, yet the record does not clearly support this classification, creating further ambiguity in sentencing calculations.

(ECF No. 1141 at 24.)

Ortiz-Acosta's statement is conclusory and completely lacking in merit. He has a total of three criminal history points. (ECF No. 1038 at 29-31.) That results in a criminal history category of II. There is no ambiguity whatsoever.

Finally, he again complains about the length of the imposed sentence. Ortiz-Acosta states that:

> despite his cooperation, he was sentenced to 16 (sic) years, which is inconsistent with the alleged agreement between his counsel and the prosecution.

---

[7] And the Court adopts the reasoning of the Response regarding waiver as part of this Order.

(ECF No. 1141 at 24.)  To the extent that Ortiz-Acosta is again asserting the existence of some less than 10-year sentence agreement based on representations of counsel by referring to "the alleged agreement" (i.e. the agreement he alleges), the Court has made clear that any such claim is inconsistent with the record. To the extent that he suggests that the Court's sentence is not what he anticipated, this, too, has been discussed. It may be true, but it does not demonstrate ineffectiveness. Finally, the Court notes that there is nothing fundamentally unfair about imposing a sentence 12 years below the guidelines in this case.

### F.  In His Own Words

At its core, each of Ortiz-Acosta's claims of ineffectiveness revolves around the notion that he had a belief, based on statements of counsel, as to what his sentence would be in exchange for cooperation and he accepted certain risks based on that belief. Ortiz-Acosta's understanding was that his deal was specific and that his sentence was essentially guaranteed to be less than 10 years. According to him, this was more than mere expectation. It was a 'done deal.' As he did not get that sentence, he criticizes counsel for either misleading him or not taking additional steps which would have influenced the Court to give what Ortiz-Acosta was promised.

There is one final piece of record evidence which exposes this entire effort as little more than after-the-fact fiction. Ortiz-Acosta's sworn testimony on behalf of the government at the trial of a co-defendant following Ortiz-Acosta's pleas.

Q.  Now, as part of your plea agreement, did you agree to cooperate with the Government?

A.   Yes.

Q.  And are you hoping to receive something in exchange for that cooperation?

20

A.    Yes.

Q.    What are you hoping to receive?

A.    A lower sentence.

Q.    Okay. And is it your understanding that as part of that
       agreement, the Government may recommend up to a 52 percent
       reduction from the low end of the guidelines for your sentence?

A.    Correct.

                        ***              ***              ***

Q.    And who ultimately decides the sentence you receive?

A.    The judge.

(ECF No. 1046 at 82-83.)

The foundation of the Motion is built on sand. There was no promise of a less than 10-year sentence or misunderstanding as to the Court's role at sentencing. Ortiz-Acosta knew the truth. And he knew the risks. Now, he simply ignores what he previously acknowledged.

**III.    Conclusion**

This matter can be and is conclusively resolved on the basis of the Motion and its supporting materials, together with the files and records of the case. As a result, no hearing is required. For all the reasons set forth above,

IT IS HEREBY ORDERED:

That the Motion (ECF No. 1141) is DENIED;

That no basis exists on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); and

That it is certified that any appeal from this Order is not taken in good faith, therefore, *in forma pauperis* status is denied for purposes of appeal.

DATED this 30th day of April, 2025.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge